UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL SCANLAND, | |
| Plaintiff, | |
| v. | No. 3:23 CV 789 |
| KORY BREATON, BALES, HENSLEY, NEWMAN, FISHER, and DAY, | |
| Defendants. | |

## OPINION and ORDER

Michael Scanland, a prisoner without a lawyer, filed a complaint alleging prison officials did not keep him, a transgender inmate, safe from harm. (DE # 2.) "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Scanland[1] alleges that on or about August 2, 2021, Sergeant Hensley removed Jason Cooper from the cell he shared with Scanland after Cooper "verbally express[ed]

---

[1] Scanland identifies as a transgender inmate and uses he/him pronouns to refer to himself in the complaint.

homophobic slurs and his intentions to assault [Scanland] were he not to be removed from the cell." (DE # 2 at 2.) Three days later, on August 5th, Cooper was placed back into the same cell as Scanland. As he was forced into the cell, Cooper said he would assault Scanland as soon as his hand restraints were removed. According to Scanland, Captain Fisher, Lieutenant Bales, Officer Day and Officer Newman were standing by as spectators while Sergeant Breaton took Cooper into the cell. The second Sergeant Breaton removed the handcuffs, Cooper assaulted Scanland as promised.

Afterwards, Sergeant Breaton allegedly made remarks that because of Scanland's "lifestyle choices," he had to "suffer the consequences of the lifestyle [Scanland] chose to live in prison." (DE # 2 at 4.) Scanland claims that Breaton was deliberately indifferent in placing Cooper in the cell, even though it was a well-established fact that the two were not compatible and Cooper expressed his intent to cause Scanland harm. (*Id*.) Scanland also claims that the other named officers were deliberately indifferent when they failed to intervene and stop Cooper from entering the cell.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id*. at 833. In order to state a § 1983 claim against prison officials for failure to protect, a prisoner must establish that the defendant had "actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*,

2

599 F.3d 749, 756 (7th Cir. 2010) (quotation marks omitted). Prison officials who had actual knowledge of a substantial risk to a prisoner's health or safety may avoid liability if they responded reasonably even if the harm was not ultimately diverted. *Farmer*, 511 U.S at 844; *see also Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006).

Here, Scanland has plausibly alleged a substantial risk of harm to him by putting an inmate who made homophobic comments and expressed his intent to physically assault Scanland. The officers had actual knowledge of impending harm because they were present when Cooper said he would assault Scanland as soon as his cuffs were removed. (DE # 2 at 3.) Thus, Scanland may proceed against Sergeant Breaton, Captain Fisher, Lieutenant Bales, Officer Day and Officer Newman for failing to protect him in violation of the Eighth Amendment.

In addition, Scanland sues William Hyatte, then Warden of Miami Correctional Facility, for being "in a position of knowing that the placement was going on" and failing to prevent it. (DE # 1 at 4.) The Warden cannot be held liable solely on the basis of his position as a supervisor. *Chavez v. Ill State Police*, 251 F.3d 612, 651 (7th Cir. 2001) ("*respondeat superior* cannot be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights." (quotation marks omitted)). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). To be held liable, a supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir.

2012). Scanland alleges no facts to support his assertion that the Warden was aware of his particular situation. The Warden will be dismissed.

Scanland cannot proceed against the Indiana Department of Correction because it is an arm of the state and cannot be sued for damages under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). Furthermore, although Scanland also sues Classification Director Jack Hendricks and the "L" Housing Unit Sergeant (named as John Doe), there is no mention of either's involvement in the incident alleged in the complaint. Therefore, Hendricks and Doe will be dismissed.

Finally, Scanland alleges that the defendants "are culpable in that their actions, inactions, statements, negligence, and deliberate indifference created a scenario and environment that [Scanland] became the victim of a hate crime." (DE # 2 at 5.) He requests that an investigation be made into whether the defendants violated 18 U.S.C. § 242. However, Scanland has no constitutional right to demand a criminal investigation. *See Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) ("We note at the outset that Rossi does not have a constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction."). This does not state a claim.

For these reasons, the court:

(1) **GRANTS** Michael Scanland leave to proceed against Kory Breaton, Bales, Hensley, Newman, Fisher, and Day in their individual capacities for compensatory and

4

punitive damages for failing to protect him from an attack by his cellmate at Miami Correctional Facility on or around August 5, 2021, in violation of the Eighth Amendment;

(2) **DISMISSES** all other claims;

(3) **DISMISSES** the Indiana Department of Correction, William Hyatte, Jack Hendricks, and John Doe;

(4) **DIRECTS** the Clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Kory Breaton, Bales, Hensley, Newman, Fisher, and Day at the Indiana Department of Correction, with a copy of this order and the complaint (DE # 2);

(5) **ORDERS** the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) **ORDERS**, under 42 U.S.C. § 1997e(g)(2), Kory Breaton, Bales, Hensley, Newman, Fisher, and Day to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

**SO ORDERED.**

Date: March 15, 2024

  s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURTcorrect